Attorney General Paul Vick, U.S. Supreme Court Judge Mr. Vick, whenever you're ready. Good morning. May it please the court, my name is Paul Vick, I represent Keith Austin who was a member of the United States Army and was injured in a combat mission in Iraq in 2007. He filed a claim for benefits under what is known as the TSGLI, Traumatic Injury Protection Act, which is a rider to the Service Members Group Life Insurance Policy, which is underwritten by Prudential Insurance Company, administered by the Secretary of Veterans Affairs and then the service branches do certain administrative tasks associated with claims. Mr. Austin filed a claim for benefits under the TSGLI for the maximum amount of benefits, which is 120 days, four 30-day increments at $25,000 per increment, which is allowed under the statute and under the procedures guide. Along with that claim that he filed, he filed what was required and is still required, a signed HIPAA authorization allowing the Department of the Army and the OSGLI, which is a division of Prudential Insurance Company or a subsidiary of Prudential Insurance Company, to obtain relevant medical records in the event there's a question of eligibility or in determining whether he gets the benefits. He also filed under Part B of the application what's known as the Physician's Certification. That certification is filled out by a professional physician. I don't think it's actually a requirement to be a professional physician, but a health care provider. In this instance, it was filled out by the surgeon who performed multi-level repairs to Mr. Austin's back as a result of the combat-related injury that he received. And he certified in that Part B of the application that Mr. Austin was unable to perform three activities of daily living. Unable to transfer independently or without assistance, unable to bathe independently or without assistance, and unable to dress independently or without assistance. And he certified that he was unable to perform those three activities for a period in excess of 120 days, or four months, which would be the maximum amount of benefits available under the policy. This was submitted, the application was submitted with the HIPAA authorization, the certification, and then the Army granted 30 days of benefits based upon a review by an unrelated physician who had never treated Mr. Austin, never seen Mr. Austin, and according to the government's argument, didn't have adequate medical records to make a determination. Is this only administered by the insurance company or does the Army have some role in reviewing this paperwork? The way that the application is administered by the Secretary of Veterans Affairs. They promulgated the rules under the CFR describing how this application process works. The branch, the service branch, in this instance, the Department of the Army, then makes a determination based upon the application as to whether or not the claimant is entitled to the benefits. That determination is forwarded to OSGLI, which is the subsidiary credential who then informs the claimant as to what the decision is. So it's kind of a, the administration of the policy and the rules are promulgated by the Secretary of Veterans Affairs. And that's an important distinction when we get into the certain rules in legislation that applies to this act and applies to benefits to service members. And that's what I'd like to discuss this morning. First off, legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. That is the Fishgold case, United States Supreme Court case, which was handed down immediately after World War II, describing how the rules and legislation are being interpreted in favor of veterans as opposed to other agency decisions or other agency acts, which we all understand under the Administrative Procedures Act is entitled to a certain presumption. Legislation also holds that for purposes of any statute, and specifically the statutes that confer benefits on veterans or armed services members, that it is to be liberally construed, that it is to be construed on a level playing field where you have an equal amount of positive and negative information. It's to be construed in favor of the veteran. And that's under 38 U.S.C. 5100. Specifically, I believe that's 5107. But the other thing that that statute holds that I find particularly important, and that was a statute that was enacted in 2000, Veterans Claims Assistance Act. The other thing that I find extremely important in that instance is that the Army, in this instance, the service branch, is required to make reasonable efforts to obtain relevant medical records, including private records, on behalf of a claimant. The Code of Federal Regulations used this statute as authority to enact their statutes, which hold the exact same thing. In other words, there's a rule in place that applies to any claim that's made for a benefit on behalf of a veteran. I have a couple of questions. Yes, Your Honor. Number one, I'm just wondering whether or not the records exist for the period that you claim Mr. Austin is entitled to these benefits. Do they exist? And that's a great question, Your Honor. I know Mr. Austin, and this was before I became involved in this case, but Mr. Austin told me he got what he could from Dr. Oishi. I think where the problem comes in, potentially, is, and this is speculation on my part, but he was treated at the Monroe Clinic at Fort Hood, Texas. They referred him out to a pain clinic and then eventually out for the surgery with Dr. Oishi. So we've got military records, and then we've got the surgical records that are in the actual administrative record in this case that describe what happened with Mr. Austin. Then we have, in August of the year that he was trying to get certified for benefits, this is three months after the end of his certification period, seven months after surgery, Dr. Oishi is still holding him off work and is limiting his activities to a half a day, can't bend, can't stoop. I mean, there's a lot of things. So we know that Dr. Oishi is involved in this process because we've got records that show that seven months after the surgery. We've got the surgical records. So the short answer to that is Mr. Austin said he got what he could from Dr. Oishi, and the surgery was performed at Providence Hospital in Waco. Well, a couple of things I guess in connection with that, because you mentioned the HIPAA authorization. Yes, sir. And apparently you contend that the Army had some obligation to pursue and try and acquire Mr. Austin's medical records. In the event of a question of eligibility, yes, sir. Absolutely. And that is because of Section 38 U.S.C. Section 5103A, Secretary shall make reasonable efforts to obtain relevant medical records, including from private medical providers, which are adequately identified and authorized by the claimant. In addition, it states that there are certain things that have to be provided by the claimant. Number one, who was the provider? Well, we know it was Dr. Oishi. They had the surgical records. We know that it was done at Providence Medical Center in Waco. What is the type of injury that was incurred? Well, we know it was a multilevel surgery on his back as a result of them hitting this IED hole while in a combat mission. The third thing, what is the relevant period of time? Well, clearly we know the relevant period of time is for that four-month period. So the Army had everything they needed to fulfill their obligation to these service members under statute and under the regulations promulgated by the Secretary of Veterans Affairs to go and get those records in the event of a question of eligibility. And the reason that that is so important is because his treating surgeon has already certified. Well, I guess a couple of things in connection with that. One is I'm not so sure you told me, I don't know whether you told me you know whether or not there are some records that exist. I don't know, Your Honor. All right. Yes, I do. So for all we know, the Army doesn't know whether or not they exist. That is a possibility. And then the other thing in connection with that is it just seems to me that if I bring a claim, then the burden's on me to provide the documentation in support of my claim. And that's what the Army says we don't have here is the records to support the claim. And you seem to be saying, but the Army had the responsibility to find the records to support your client's claim. Yes, sir. And I believe that that is supported by statute and is supported by the Secretary of Veterans Affairs' own regulations, which is who is administering this policy. I mentioned earlier this policy. I mentioned earlier how important that is because this statute, 38 U.S.C. 5100, applies to a claimant who is defined as any individual applying for or submitting a claim for benefits under laws administered by the Secretary of Veterans Affairs. Mr. Austin gave them with his application what he had. He asked the Army to reconsider when they denied the 90-day benefits. And he supplied additional information at that point, what he had. But not for the 120 days we're looking for. No, sir. What we have is we have surgical records showing the surgery that was performed, and then we have records that were provided for seven months down the road. If I hear your position, you're saying that the responsibility for locating and delivering the records for those 120 days was not your client's obligation. My client's obligation, Your Honor, under this application process is for his physician to certify under Part B of the application his inability to perform these activities. If the physician certifies that. But no reference to those 120 days. And there's no requirement in the application process for him to provide those records because the physician. Well, that's what he's applying for, isn't it? He's applying for this benefit for those four months. Yes, sir. That is correct. Could he have provided those records? I'm told by my client that he tried to get those records from the doctor, that he gave them what he had. Well, but how about other sources? Hospital? Other doctors? From a doctor. I think he went to his treating physician, the surgeon that performed the surgery, the one that actually did the certification for him on Part B of the application. That's the surgeon. Are you talking about Oishi? Yes, sir. Yes, sir. Of course, and he never provided anything for those 120 days. Nothing other than the certification and his surgical reports. Well, that's conclusional. Yes, sir, and I'm sorry. I didn't mean to interrupt. That's just an after-the-fact, conclusional statement. It's not medical records. There are no medical records attached to that statement. And, in fact, Dr. Oishi and I. Not even referred to. I think the distinction, Your Honor, is this. He's the doctor that performed the surgery. He's the doctor that did the multi-level. But his conclusional statement is not medical records. No, sir. It's not, and there's no requirement under the application process. There's no requirement for the claimant to provide medical records. All they're required to do is provide the certification from the physician, which is exactly what he did. The reason that, and I think we can take it a step further, Your Honor, in terms of why I think that's so important. The Secretary of Veterans Affairs stated in the interim final rules, when they were getting this together in 2005 for this TSGLI process, he stated that we need to require these service members or these service branches. Service member signs a HIPAA authorization as part of the process so that the service branch can obtain the relevant records in the event there is a question of eligibility. The reason that's so important is because the physician has made a certification. The physician has said he is unable to do these things. I'm the one that performed the surgery. And he also states, and he checked on his certification, that he had reviewed relevant medical records to reach that conclusion. Now, did he submit those with the application? No, sir. But there was no requirement that he do so. The requirement falls on the service branch. If they have a question of eligibility, go out and get those records. If they have a question of eligibility. That's why any service member is required to file a HIPAA authorization. And I think if we took it a step further, if we look at the types of folks that are applying for these benefits, these benefits are for those service members injured at that time. It's been expanded since this time. But at that time, injured in combat, suffering traumatic injury. That includes traumatic brain injury. That includes a lot of different things that these folks, it affects their ability to do much of anything, frankly. And to go through an application process where they're required to go outside of what that process requires them to do just to be able to get these benefits, public policy would dictate that is not a fair and equitable way to administer this policy. The rules have been set up. With the application or does other evidence in the record show, you had said it earlier in your oral argument, show where he was treated, where the records would be? Yes, sir. Absolutely. Part of his application? Was that in his application? Dr. Owishi and also Providence Hospital where the surgery was performed. Yes, sir. Well, that's after the 120 days. I'm looking at where records would be that would suggest what his condition was during the relevant 120-day period. There was also records in the administrative, there was documents in the administrative record that identified Monroe Clinic on Fort Hood, which is where he originally was treated and they referred him out to Dr. Owishi for the surgery and things of that nature. Is there anything that specifically says he was treated during this 120-day period at this facility? No, sir. I don't believe there is anything in the record that states that. But I think that there was sufficient information available to that service branch to get those records. They claim they didn't have the records yet they had a doctor, an Army doctor, certify that, well, he's okay for 30 days benefits but we don't have enough records to make a determination. How on the one hand can you have the surgeon who performed the surgery on this gentleman certify for four months that he's unable to perform three activities of daily living and an Army doctor... Don't you need two basic things, the certification of the physician and the physical records? No, sir, you do not. That is not a requirement under this statute. I thought this whole case was about the records of those 120 days. It is, Your Honor, and the issue is this. The applicant is not required to do anything other than fulfill Part A of the application, which includes the HIPAA authorization, and turn in Part B of the application, which is the physician's certification. What the statutes say, what the rules say, what the Secretary of Veterans Affairs said when they were doing the interim final rules for this process. Maybe I missed it, but I didn't get where Dr. Oishi specifically certified to these several of the total type of things he couldn't do as to those 120 days. Absolutely, Your Honor, and that is in Part B of the application itself. That is a record on appeal. I can tell you those pages, 67 through 72. It's in his physician's certification. That is a five-page process he goes through. He's certified as to three. Two are required. He's certified as to three activities of daily living that Mr. Austin was unable to perform for that relevant 120-day period. It is clear from that certification. Crystal clear that it was for that period of time. All right, Counselor. Thank you. Please, the Court. My name is Clayton Dedricks. I'm Assistant United States Attorney, and I represent the appellees in this case, the United States Army and the Department of the United States of America. The issue in this case is the relative duties of the parties. That is specifically answered in 38 U.S.C. 5107 and 38 U.S.C. 5103 Alpha. In 5107, it specifically states that a claimant has the responsibility to present and support a claim for benefits under this title. Section 5103A says that the VA, and in this case the Army on behalf of the VA, has the duty to assist a claimant with reasonable efforts to obtain records that a claimant has adequately identified and authorizes the agency to retreat. In this case, there is no adequate identification of medical records by which the Army could go obtain those. In his brief, he says that the appellant states that in the records that were provided, some 60-odd pages of records, none of which were from the relevant period, save Dr. Oricci's op report. Well, is there any need for him to have seen a medical professional of some sort during that 120-day period? I don't know when this treatment at Fort Hood may have been in relationship to that 120 days. Can you answer that just quickly before I ask the next part of the question? If he were treated at Fort Hood, maybe that's a question, maybe that's not clear. Would that have been before the 120-day period? He was treated both before and then in September of 2009, 3 months after that period. And there's no evidence, as I understand it, that he was treated anywhere necessarily during that 4-month period that would be the subject of the claim. Is that true? There's no evidence in the record. That's correct. It's not just that the records are not provided. There's no evidence he was actually treated then. But if there was evidence either from Fort Hood or otherwise that he had these conditions or limitations that would have continued during that time period, would he need records specifically of a medical professional who saw him during that 120 days? If he saw no medical... If he saw no one during that 120 days, but he did see somebody before that, that through those medical records, should they be obtained, would indicate he had these limitations, would that be sufficient? I think it would, Your Honour. The problem is the records before the surgery, in January of 2009, only indicate that he had a pain syndrome and a bulging disc that required surgery, and that's why he was referred to Dr Olesch. One of my concerns in this case is that it can be difficult to get medical records. And if he were treated at a military facility, it may be doubly difficult for that to be acquired. I'm not suggesting that's the case, but it could be. And so the assistance of the military in obtaining that record certainly makes some sense. So I guess this is a case about unknown records. We don't know what's there. He didn't provide them. Is there any evidence that somebody on the side of the military did try to obtain records? There's no evidence they did because he didn't identify any records. He didn't say, I was seeing Dr Jones or I was seeing a rehab physician during that time period. The medical records that were provided, as I said, are before the surgery, and the first medical record after the surgery is August 2009, so 3 months after the surgery. None of them make reference to any care providers. Pellnant says that there was enough information in there for the Army to identify medical records and go get them. But it's not the Army's duty to identify records. As the Canlis case states, which is cited in our brief, the Army has no duty to go on a fishing expedition. It is the appellant's duty, a claimant's duty, to identify those records adequately, and they failed to do that in this case. What if he made it, what if Mr. Austin made a declaration that there were no medical records for that period of time, that there are no other medical records aside from what's already been provided? Would the information that's been provided be sufficient to make a determination about whether or not he was entitled to benefits for that 120-day period? In other words, I'm gonna ask it another way before you get to answer it and probably confuse it, make it even more confusing, but in other words, could you look at the records and the information that have been submitted and make a determination about his entitlement to benefits, or would you be in a position of saying, absent any other medical records, there's nothing here sufficient to support a claim? Well, I think that's a different case. I mean, the indication is that there may be medical records, and in what became their final agency action in this case, the Army sent him a letter saying, you haven't provided enough documentation. We require medical records from that period. If he had responded and said, I did not see anybody during that time period, then the Army would be left to make a decision based on what they had. But their decision was not, we're not gonna pay you because you don't meet it. Their decision was, we require additional evidence to make a determination. If that evidence doesn't exist, and he says it doesn't exist, then they would be left with what they have. And I don't know what their decision would be, because their final decision was, we need more things, which he did not provide. Well, you talk about a fishing expedition language from one of the cases. Did he identify on this form, Part A or Part B, was he supposed to identify the places where he had been treated? Not on the form, no. There's no place to indicate. The only indication from a physician would be the Part B certification, which Dr. Oishi signed. But Dr. Oishi signed saying, I have not observed this patient's loss. Meaning, he did not observe his inability to perform the ADLs. So the indication would be from the time of surgery on, he never saw this patient. At least until sometime in August when he started writing letters to keep him off work. I get the impression from what you responded to Judge Gray, is that had he stated, had the claimant stated that I was treated at these locations, I have tried to get the records from those locations, but have been unable to do so through the bureaucracy of the military or however he wanted to explain it, that that would make this case different? It would. Because then the duty is on the United States to go get those records because he identified these are the places I was going, I can't seem to get those records from them. It would have then become the VA's duty to go get those records. Is that clear from the statute or regulation that that is necessary before the duty is triggered? We've heard it quoted from opposing counsel that it sounds like the duty exists regardless. 38 U.S.C. section 5103A says the Army or in this case the Army, the VA has a duty to give reasonable assistance to obtain medical records that a claimant adequately identifies and authorizes the agency to receive. The VA's duty is not triggered until those records are adequately identified. And in this case, all the Army got was a stack of irrelevant medical records in which in the reply brief the appellant says you had everything you needed there, Army. You go identify those records. It is the appellant's duty to identify the records, not the agency's. The next issue I'd like to address is the assertion that the district court did not properly consider the documents that were provided. And this is based on the district court's reference to a ADL worksheet which is in the record. But this confusion as to what is the worksheet and what is the Part B certification is created actually in the appellant's brief when he cites as the ADL worksheet the pages that correspond with the Part B certification and the ADL worksheet. When discussing the ADL worksheet, the district court refers to that same number of pages as the ADL worksheet and specifically stating that Dr. Oishi certified that he did not observe this patient's loss of ADLs. So the court did properly consider Dr. Oishi's certification. He doesn't call it a certification, but the pages he referred to are the same pages that the appellant used when he referred to the Part B certification. Counsel, as I understand the process, and you correct me if I'm wrong, but the Army examines these TSGLI worksheets and makes evaluations about claims. Are those then forwarded to Prudential? No. Prudential just gets a certification from the Army saying either this claimant is certified for the injury they claim, pay them whatever the claim is, or it gets a worksheet that says it's denied and then it has codes indicating why it was denied. But what Prudential got from the Army was pretty specific about the reason. Insufficient information to support the medical professional statement. Yes. Is that the claimant? Does he get that same kind of specific information about the reason his claim is denied? Well, he did in this case. On 2 April 2012, the Army wrote him a letter that said, we're unable to approve your claim because there is insufficient documentation to support your claim. That was a significant amount of time that transpired between the time the Army sent that note to Prudential and the time that the claimant is aware of it. Is that right? Or is there no delay? Significant delay? There's no significant delay. When was that message first communicated to Prudential? Let me ask it that way. I'm sorry? When was the message first communicated to Prudential the reason that the claim was denied? And then how much time transpired between that communication to Prudential and the information being disseminated to Mr. Austin? Was that significant? I don't recall that specifically, but my recollection is it was around three months. There were two appeals in this case. The final one was on the 2nd of April. I think the decision was made actually in March and the claim was filed in January of that same year, or maybe December of the prior year. So the whole time from the filing of the second appeal to the receipt of the letter, I think, was a total of four months. But in that letter he was specifically told why they were unable to at that point grant his claim. He had a choice at that point. He could either say here are the medical records or here's the doctor I saw or he could go to federal and he chose that route rather than provide the Army the information it would potentially require to approve his claim. One of the arguments that maybe you are responding to but one of the arguments that maybe the premise for Judge Gray's question is that the letter from Prudential Sgt. Austin just says the loss does not meet standards without explaining what the problem was. That's the first appeal. That is the first appeal. And that's March. And you were saying by March he knew, I thought, March 2011. March 14. Correct. March 14, 2011, they sent that letter. He then appealed that and in April 2, 2012 Okay, so a year later we responded to that appeal saying we require more documentation. It was a year between that letter from Prudential 13 months until he was told the reason is the absence of sufficient documentation. He filed he initially filed a claim which was partially approved. He would receive $25,000 for the first month. He appealed that in 2011 and that claim was denied because as you stated they said it doesn't meet the standards. He then appealed that. That was in March of 2011. He filed his appeal to that in either December 2011 or January 2012. In April of 2012 that second appeal was denied and in that denial letter they said you haven't provided enough documentation for this. We require the medical records, specifically giving the dates 13 January through 15 May 2009. So April 2012 would be the first time he was expressly told the problem is the inadequacy of your medical records? It is, sir. And that was following either December or January that preceded that April? Yes, sir. If there's any questions I'll return my time. We'll take your time back. Thank you. You may. You may use all your time. We'll give some of it back as well. Real quickly I think the first thing that I'd like to address is this gap in time. What happened was Mr. Austin asked that the denial of the 90 days worth of additional benefits be reconsidered. He filed a motion for appeal for reconsideration. The Army treated that for whatever reason as a new application. Even though it had the same claim number, same application as what the original application was they treated it as a new one. And their response to that was the claim was not approved because his loss did not meet the standards for TSGLI and must also have been certified by a medical professional. It had already been certified by a medical professional in the fall of 2010. Then finally... Is that certification addressing those 120 days? Absolutely. Yes sir. That was submitted with his application in the fall of 2010. The second thing is with respect to the medical records and I think further evidence of why that is such an important part of the Army's obligation. In the procedures guide itself there are documents that state it is a form that says for obtaining records it's a supplemental statement from the medical records provider. It lays out what the branch is supposed to do in terms of getting additional records to determine eligibility for benefits from the providers. Dr. Owishi, it was known where he was. This was all known to the Army in 2010, fall of 2010. Over two years later is when they finally said, oh by the way, we don't have enough medical records. They have an obligation not only to get the records under CFR, or 38 USC 5100. Counselor, I guess part of my problem is what I'm hearing from you is you're placing all this responsibility on the Army to get records where one, we're not certain they exist and two, the claimant doesn't have the records. Your client doesn't have the records that you claim the Army should have chased down by now. Well, and can I further clarify that point, Your Honor? Under 38 USC 5102, Section 5102, incomplete application. If the application is notified of information necessary to complete the application, if they're saying that, hey man, you should have, or sir, you should have provided those records with this application, they had a duty by statute under the Veterans Claims Assistance Act to tell him, hey, we need these records. This is incomplete because we don't have these records. At that point that dialogue could have occurred, but they didn't take that step. Well, I guess what I'm saying is now we know they claim they need the records. Still no records. Still no records, Your Honor. What happened in the interim problem is we had originally filed suit against OSGLI, a subsidiary of Prudential. And that was done right at the time that this second or third denial of benefits, I guess, actually occurred. In fact, we'd filed that suit the day before because there had been no response. That suit was ultimately dismissed by the district court because we did not bring suit against the United States under the TSGLI provisions or 5188. And so we then turned around and filed suit against the United States Government Department of the Army. So we do know that now, absolutely. And that could be done. My purpose of the argument today is an agency, an administrative agency is required to follow their own rules and regulations that they promulgate as a procedural safeguard to those claimants for benefits. Especially the Veterans Administration. The courts have held. Congress has held. That's no ordinary agency because you're protecting the benefits for our service members, for our veterans, for those who have served our country. The rules are clear. They're set out. They were in place at the time this application was made. He did everything he was required to do under that application. But the branch didn't do what they were required to do. They didn't follow their own rules. The United States Supreme Court has said if you don't follow the rules that you promulgate agency and you reach a decision because you failed to follow those rules, then it's an arbitrary and capricious decision. Does your application show any medical professional other than Dr. Oishi? Your client's application? In the record, sir? In what was filed with the Army. We heard from the government that they need identified. And if the claimant says I can't find the records, they will assist in trying to find them. But does the application identify any medical provider other than Dr. Oishi? Monroe Clinic at Fort Hood, Texas. Providence Hospital. So the application actually identified those locations? Those were records that were provided by Mr. Austin as part of his process. It identified those. And provided the records, you're telling me? I'm sorry? And also provided those records? There was records that referenced that, but counsel is correct that they did not reference the 120-day period. The only thing that references that 120-day loss period is Dr. Oishi's certification under Part B of the application. All right, counsel. Thank you, sir. Any briefs? Any arguments? We'll take a brief recess before